SUBSCRIBERS AT the AUTOMOBILE CLUB INTER–INSURANCE EXCHANGE and Club Exchange Corporation, Attorney-in-Fact for the Automobile Club Inter-Insurance Exchange, Plaintiffs-Appellants,

v.

Michael W. KENNISON et al., Defendants-Respondents.

No. 37695.

Missouri Court of Appeals, St. Louis District, Division One.

March 22, 1977.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, F. Douglas O'Leary, St. Louis, for plaintiffs-appellants.

Robert Brown, James F. Koester, St. Louis, for defendants-respondents.

DOWD, Judge.

This is an action for declaratory judgment. Plaintiff, Auto Club Inter-Insurance Exchange (Auto Club) sought to have the

trial court declare that an automobile insurance policy issued by plaintiff to Bobby Joe Brown did not afford coverage regarding an automobile collision involving Brown because the collision was caused by the intentional acts of Brown. Following a court trial, the court below denied plaintiff-appellant's prayer for relief and plaintiff appeals. Respondents did not file a brief here.

Defendant Bobby Joe Brown is insured under an automobile liability policy issued by Auto Club. On May 3, 1974, a collision occurred between an automobile driven by Brown and an automobile driven by defendant Kennison and owned by defendant Lee. Kennison instituted a civil action in the Circuit Court of St. Louis County against Brown, in which he seeks damages for personal injuries and damage to Lee's automobile, allegedly caused by Brown's negligence.

Part I of the policy issued by Auto Club to Brown requires the Auto Club to pay on behalf of Brown all sums which Brown shall become legally obligated to pay as damages because of bodily injury or property damage arising out of the use of Brown's automobile and to defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of the policy, even, if the allegations of the suit are groundless, false, or fraudulent. The policy contains this exclusion: "This policy does not apply under Part I: . . . to bodily injury or property damage caused intentionally by or at the direction of the assured." Auto Club's investigation led it to inform Brown that it could not provide coverage for the collision because it was not an accident but a deliberate act by Brown.

Auto Club prayed for a declaratory judgment that the collision was caused by the intentional acts of Brown, that the insurance policy did not cover the intentional acts, and that it was not required to defend Brown and was not liable for any judgment that might be obtained against Brown. The trial judge found that Brown's actions were wanton and reckless, but that he did not intend to injure Kennison or do substantial damage to Kennison's car.

The issue before us is whether the trial court's finding that Brown did not intend to cause injury to Kennison or the automobile and that therefore the exclusion did not apply was against the weight of the evidence and an erroneous application of the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. Banc 1976).

■ In our review, we bear in mind that the appellate courts in a court tried case should exercise the power to set aside a judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the judgment is wrong. *Murphy v. Carron, supra,* p. 32. However, where the oral evidence is largely undisputed and much of the evidence consists of documents and writings, as is the case here, the trial court is not given as much deference in its findings as in cases involving disputed oral testimony. *Prior v. Hager,* 440 S.W.2d 167, 172[1] (Mo.App. 1969).

Brown did not appear or testify in the proceedings, but a long hand statement signed by him was introduced into evidence. In his statement Brown recited that Kennison's car, with Kennison at the wheel, blocked Brown's car in the traffic lane of a parking lot. Brown sounded his horn, then twice requested Kennison to move his car. After the second request, Kennison said "you make me move it." Brown then backed his car up a few feet and "intentionally drove forward and 'rammed' into the left rear of the Kennison car." Brown estimated his speed at impact as 10 miles per hour.

The only other evidence relevant to Brown's intention came from a St. Louis County police officer who investigated the accident and took statements from both drivers. He testified that both statements confirmed Brown's statement, that both cars were damaged and Kennison was hurt, that Brown said he was trying to push the vehicle out of the way.

The most recent authority in Missouri on when injury or damage is caused intention-

ally within the meaning of liability insurance exclusion clauses is *Farmers Alliance Mutual Insurance Co. v. Reed,* 530 S.W.2d 470 (Mo.App.1975), which is a well reasoned opinion written by Judge George M. Flanigan. In that case the court set forth two different lines of authority on the issue, quoting from 2 A.L.R.2d 1238 "Liability Insurance: specific exclusion of liability for injury intentionally caused by insured":

> "The courts have generally held that injury or damage is 'caused intentionally' within the meaning of an 'intentional injury exclusion clause' if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion unless the insured has acted with such specific intent. Under this view, it is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm to a third person; it is the harm itself that must be intended before the exclusion will apply. There is, however, some authority for the proposition that such a clause will operate to relieve a liability insurer of its duty to indemnify an insured whose intentional act has caused harm to a third person where the nature or character of the act is such that an intent to cause harm is thereby inferred as a matter of law."

*Farmers* was an action for declaratory judgment and the policy language was identical to that in the case at bar. The insured collided with the rear of a car, then followed "right on his bumper," accelerating as the other car did. A second collision occurred, when the insured's car was traveling at 55 to 60 miles per hour, and the other car was forced off the road. The insured pounded on the hood of the car, grabbed a witness by the shoulder, and said he was going to whip everybody. At the time of the accident the insured stated that the people in the other car "were out to get him" and "I just got them first." In a later statement, he said he was trying to stop the car, and "so I ran up beside a couple of times and finally I just cut around kind of in front of him and he ran off" the road. The court held that the evidence justified the trial court's conclusion that the insured intended the collision and intended to cause damage to the vehicle and its occupants under either of the lines of authority set forth above on the meaning of "caused intentionally."

The only other Missouri decision on the issue is the case relied upon by the trial court in its memorandum opinion, *Crull v. Gleb,* 382 S.W.2d 17 (Mo.App.1964). In that case the evidence revealed that the insured and the driver of the other vehicle had a dispute over the boundaries of their land. The insured saw the other driver at one of the contested boundaries, drove over to him and collided with his vehicle three times. The evidence as to the intent of the insured was in dispute: the insured stated he did not intend to hit the other car, that he was unfamiliar with his truck, that his foot slipped from the slick clutch pedal, and that he lost his presence of mind. The court apparently took the viewpoint that specific intent to cause injury was necessary for the insurance exclusion to apply, and defined intentional as not only intending the acts themselves, but also "intending that harm result from said acts." 382 S.W.2d at 21. The court held that the evidence was sufficient to raise an issue of fact for the jury on whether an insured's actions were intentional or wanton and reckless and therefore refused to set aside a jury verdict against the insurance company on the grounds that the acts were intentional and excluded from coverage.

In our opinion, *Crull v. Gleb* supports the first line of judicial authority set forth in *Farmers, supra,* namely that specific intent to cause damage or injury is required for the intentional injury exclusion to apply. However, the trial court erroneously applied the requirement of specific intent to cause harmful results to the facts of the present case. Intended results are not only those results which are desired. If a person knows consequences are certain, or substantially certain, to result from his act,

and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, § 8A (1965). Therefore, an admission of specific intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act. For instance, in *Farmers, supra,* the court found that the collision and the resultant injury was intentional, although the insured did not admit intent to cause harm or even the intentional nature of the collision, and in his statement only said that he wanted to stop the car and therefore went "beside it" and "cut in front" of it. One is presumed to intend the natural and probable consequences of his acts and conduct. *Camp v. John Hancock Mut. Life Ins. Co.,* 165 S.W.2d 277, 281[5] (Mo.App.1942). When an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional. *Rankin v. Farmer's Elevator Mutual Ins. Co.,* 393 F.2d 718 (10th Cir. 1968); *see Camp, supra.*

In the present case, unlike *Farmers, supra,* and *Crull v. Gleb, supra,* the insured admitted that the collision was intentional. The circumstances indicate Brown might have been angry when Kennison refused to move his car. Brown did not gently push the car to move it out of his way; he states that he backed up first and then "rammed" into the car. Injury to the automobile and its occupant was a natural and probable result of the deliberate collision which should have been expected and hence intended. We conclude that the weight of the evidence showed not only intent to collide but intent to cause harmful results.

We arrive at the same conclusion under the second view of the applicable law set forth in *Farmers, supra,* namely that intent to cause harm can be inferred as a matter of law from the nature or character of an intentional act. Intentional "ramming" of an occupied vehicle is a dangerous act from which at least some harm is almost certain to result. It is not like throwing a missile to frighten and unintentionally hitting someone. Courts have rejected fine distinctions between intentional acts and intentional injuries in deliberate automobile collisions. See *Allstate Insurance Co. v. Hiseley,* 465 F.2d 1243 (10th Cir. 1972) (collision following incident outside bar and chase); *Rankin v. Farmer's Elevator Mutual Ins. Co.,* 393 F.2d 718 (10th Cir. 1968) (truck deliberately drove into motorcycle at 50 m. p. h.); *Transamerica Ins. Co. v. Cannon-Lowden Co.,* 400 F.Supp. 817 (D.Mont. 1975) (commission of suicide by driving into path of oncoming car at 60 m. p. h.); *Wigginton v. Lumbermen's Mutual Casualty Co.,* 169 So.2d 170 (La.App.1964) (intentionally backed into taxi that refused to move).

Thus under either line of authority on what constitutes intention within the meaning of intentional injury exclusions, we hold that the weight of the evidence requires a finding that Brown intended the collision and the resultant damage to the vehicle and its occupant. To hold otherwise, would, we believe, establish a subjective standard of intent which would make intentional injury liability insurance exclusions inapplicable without an admission by the insured of specific intent to injure.

Reversed and remanded for judgment to be entered in accordance with our holding herein.

CLEMENS, P. J., and WEIER, J., concur.